AO 102 (01/09) Application for a Tracking Warrant

FILED

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

2016 JUL 14 PM 1:33

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____DM_____
          DEPUTY

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>AT&T/Cricket Cellular Phone Assigned Call Number<br>512-939-4397, with Account Number 790283129 and<br>International Mobile Subscriber Identity (IMSI)<br>310150820417425 (Target Cell Phone) | Case No.  A:16-m-523 |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __963, 952, 960__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Andres H. Gonzalez, ICE/HSI Special Agent
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: __7/14/16__

_____
Judge's signature

City and state:  Austin, Texas

Andrew W. Austin, United States Magistrate Judge
*Printed name and title*

**SEALED**

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | § |
| THE CELLULAR TELEPHONE ASSIGNED | § |
| CALL NUMBER 512-939-4397, WITH | § |
| INTERNATIONAL MOBILE SUBSCRIBER | § |
| IDENTITY (IMSI) 310150820417425. | § |

### AFFIDAVIT IN SUPPORT OF APPLICATION

I, Andres H. Gonzalez, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703 (c) (1) (A) for information about the location of the cellular telephone assigned call number **512-939-4397**, with International Mobile Subscriber Identity **310150820417425** (the **TARGET CELL PHONE**), whose service provider is **AT&T/CRICKET**, a wireless telephone service provider headquartered at 208 South Akard Street, Dallas, Texas 75202. The **TARGET CELL PHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and I am currently assigned to the Resident Agent in Charge (RAC), Austin, Texas, office. I have been employed with HSI as a Special Agent since March 2009. Prior to my employment with HSI, I was employed with the U.S. Border Patrol as a Patrol Agent in the Laredo Sector for

approximately seven years. My responsibilities include investigating criminal violations relating to offenses committed against the United States including but not limited to, immigration violations, controlled substances violations, import and export violations, financial crimes, fraud, and child pornography.

3. During the course of my employment as an HSI Special Agent, I have received courses of instruction from the Federal Law Enforcement Training Center (FLETC) relative to investigative procedures, criminal law, rules of evidence and Federal procedures. I have conducted and participated in criminal investigations which have resulted in the seizure of contraband and documents. As a result of these investigations and my training, I am familiar with the methods commonly used by drug traffickers and drug trafficking organizations related to the distribution, transportation, and facilitation of illegal narcotics. I am also familiar with the methods commonly used by human smuggling and human trafficking organizations related to the transportation and facilitation of undocumented aliens. I have affected arrests and have obtained indictments and convictions of violators. I have also conducted and participated in numerous searches, pursuant to consents as well as warrants, for drugs and other criminal offenses. As an HSI Special Agent, I have received extensive training in the investigation of violations of federal law, including Immigration and Naturalization (Title 8, United States Code), the Money Laundering and Control Act, the Racketeer Influenced and Corrupt Organization Act (Title 18, United States Code), the U.S. Customs Code (Title 19, United States Code), and the Controlled Substances Import/Export Control Act (Title 21, United States Code). I have also participated in numerous investigations conducted by agents and officers of local, state, and federal law enforcement agencies concerning the illegal importation and distribution of controlled substances into and throughout the United States, illegal immigration, human smuggling, and human

trafficking, and the use, concealment, and exportation of the proceeds of narcotics and human trafficking activities. In my capacity as a federal law enforcement officer I have had numerous conversations with persons engaged in the illegal manufacture, sale, importation, transportation, distribution, and use of controlled substances, as well as human smuggling and human trafficking and the laundering of proceeds from those activities. I have also had numerous conversations with other experienced police officers, investigators, intelligence analysts, attorneys, judges, and law enforcement officials in which the techniques and methods of narcotics trafficking, human smuggling, human trafficking, and the laundering of cash proceeds derived from those illegal activities were discussed and reviewed. I have participated in investigations which involved the use of Title III Interceptions, undercover agents, confidential informants, cooperating witnesses, physical surveillance, consensual recordings, drug evidence purchases, toll record analysis, and subject interviews. In addition, I have training and experience in debriefing defendants, informants, and other persons who have personal knowledge of illegal activities.

4. Based upon my knowledge, training and experience, and the experience of other law enforcement personnel with whom I have spoken and consulted, I have become familiar with the patterns of activity of drug traffickers; the types and amounts of profits made by drug dealers; and the methods, language and terms that are used to disguise illegal drugs and the dealings associated with such activities. In connection with my duties and responsibilities as a law enforcement officer, I have testified in judicial proceedings and prosecutions for violations of laws. I am familiar with the ways in which narcotic traffickers conduct their business, including, but not limited to, their use of mobile telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

5. The facts in this affidavit were provided by HSI Special Agent S. Owens that were personally observed/acquired and/or obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 963, 952, and 960 have been committed, are being committed, and will be committed by Juan Alberto MARTINEZ, Maria Guadalupe Marlen CRUZ, and other criminal associates. On April 26, 2016, a Criminal Indictment was returned by a Federal grand jury in Laredo, Texas, which charged LARA-Almanza, Juan Alberto MARTINEZ, and Maria Guadalupe Marlen CRUZ with conspiracy and importation of methamphetamine from Mexico. LARA-Almanza has remained in custody since his encounter with federal officers. Bench warrants for the arrest of Juan Alberto MARTINEZ, and Maria Guadalupe Marlen CRUZ were issued on April 26, 2016. Their whereabouts are uncertain; and despite diligent efforts by federal officers, they have not been located. There is also probable cause to believe: (1) that Juan Alberto MARTINEZ, and/or Maria Guadalupe Marlen CRUZ possess and/or use the **TARGET CELL PHONE**; (2) that the location information described in Attachment B will constitute evidence of these criminal violations; and (3) that the location information sought herein will lead to the identification and arrest of individuals who are engaged in the continuing commission of these crimes.

## PROBABLE CAUSE

7. On April 10, 2016, Homeland Security Investigations (HSI) Laredo Special Agents (SAs) and High Intensity Drug Trafficking Area (HIDTA) Task Force Officers (TFOs)

responded to the Lincoln-Juarez Port of Entry (POE) in Laredo, Texas, to investigate the details of a narcotics smuggling event. Jesus LARA-Almanza applied for admission as a passenger in a taxi. A Customs and Border Protection Officer (CBPO) discovered four packages concealed in the waistband of LARA-Almanza's pants. The packages contained a substance that tested positive for the presence of methamphetamine.

8. During an interview, Jesus LARA-Almanza stated he traveled from Austin by Greyhound bus to Nuevo Laredo, Mexico on April 9, 2016 to pick up cocaine to smuggle into the U.S. from Mexico. An unknown man picked him up at the bus terminal in Nuevo Laredo, and took him to a hotel where he stayed the night. The next day Maria Guadalupe Marlen CRUZ arrived with the unknown man. She introduced the man as her uncle. CRUZ and her uncle delivered the four packages of narcotics, and returned LARA-Almanza to the Greyhound bus terminal for his return trip to Austin, Texas. LARA-Almanza was expecting to smuggle the narcotics through an international bridge at Laredo, Texas on the way to Austin. LARA-Almanza stated he was going to be paid $15,000.00 U.S. dollars cash once he arrived to Austin safely.

9. LARA-Almanza stated he was supposed to deliver the narcotics to a known individual in Austin, Texas by the name of Juan Alberto MARTINEZ. LARA-Almanza stated Juan Alberto MARTINEZ gave him $300.00 U.S. dollars for food and bus fare from Austin, Texas to Nuevo Laredo, Mexico. LARA-Almanza stated MARTINEZ gave him directions as to who he should contact once arriving into Mexico and what type of clothing to wear to smuggle narcotics into the United States. LARA-Almanza stated CRUZ and MARTINEZ are married and both are knowledgeable of narcotics trafficking. LARA-Almanza gave HSI special agents consent to search his cellular phone. Multiple text messages between LARA-Almanza and

MARTINEZ were discovered corroborating the information LARA-Almanza provided to HSI special agents. Agents inspected the phone and messages, and determined that the text messages on LARA-Almanza's cell phone originated from cell phone number **512-939-4397**.

10. During the interview, LARA-Almanza received multiple phone calls to his phone from MARTINEZ. LARA-Almanza stated he and MARTINEZ have been friends since high school but they did not frequently talk. LARA-Almanza stated MARTINEZ's phone number was **512-939-4397**, and he also resided in Austin, Texas. Based on the context of the text messages and the timing of the phone calls from **TARGET CELL PHONE** to LARA-Almanza, it appeared that MARTINEZ was attempting to determine LARA-Almanza's whereabouts prior to and during the attempted trafficking attempt. Through investigative research, HSI was able to find a photograph of Juan Alberto MARTINEZ and Maria Guadalupe Marlen CRUZ. LARA-Almanza was able to identify the individuals in the photograph as MARTINEZ, the individual who paid him the $300.00 U.S. dollars and set up the meet in Mexico with the narcotics smuggler, and CRUZ, the person with her uncle who picked up LARA-Almanza in Mexico and gave him the packages of narcotics. Following LARA-Almanza's interview, HSI Laredo special agents placed LARA-Almanza under arrest in violation of Title 21, U.S.C. § 952, Importation of a Controlled Substance with the Intent.

11. On July 1, 2016, a tracking warrant for **TARGET CELL PHONE** was submitted in the Western District of Texas, Austin Division. An order granting the tracking warrant (A-16-M-489) was signed and issued by U.S. Magistrate Judge Andrew W. Austin. On that same date, the tracking warrant was subsequently executed with **AT&T/Cricket** and later denied due to the fact that the International Mobile Subscriber Identity (IMSI) provided on the order did not match the assigned cell phone number. Further investigation determined that MARTINEZ had recently

purchased a new cellular phone resulting in a change with the IMSI.

12.     On July 7, 2016, HSI Laredo special agents submitted a subpoena with **AT&T/Cricket** to identify the new IMSI associated to the **TARGET CELL PHONE**. Upon receiving the subpoena return, HSI Laredo special agents identified the new IMSI as **310150820417425** and determined that for the exception of the IMSI changing, the remaining information related to the **TARGET CELL PHONE** had remained the same, to include the account number **790283129** and assigned phone number **512-939-4397**.

## CONCLUSION

13.     Based on my training and experience, combined with the facts and observations set forth in the foregoing paragraphs, I have learned that **AT&T/CRICKET** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically

less precise that E-911 Phase II data.

14. Based on my training and experience, I know that **AT&T/CRICKET** can collect E-911 Phase II data about the location of the **TARGET CELL PHONE**; including by initiating a signal to determine the location of the **TARGET CELL PHONE** on **AT&T/CRICKET**'s network or with such other reference points as may be reasonably available.

15. Based on my training and experience, I know that **AT&T/CRICKET** can collect cell-site data about the **TARGET CELL PHONE**.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that this Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information,

there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

18.     I further request that the Court direct **AT&T/CRICKET** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **AT&T/CRICKET**. I also request that the Court direct **AT&T/CRICKET** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **AT&T/CRICKET**'s services, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on **AT&T/CRICKET**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **AT&T/CRICKET** for reasonable expenses incurred in furnishing such facilities or assistance.

19.     I further request that the Court authorize execution of the warrant at any time of the day or night, owing to the potential need to locate the **TARGET CELL PHONE** outside of daytime hours.

20.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

21.     It is further requested that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of **30 days**

after the termination of the execution of the warrant or any extension of said warrant.

FURTHER AFFIANT SAYETH NAUGHT.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
ANDRES H. GONZALEZ
Special Agent
Department of Homeland Security
U.S. Immigration and Customs Enforcement
Homeland Security Investigations
Austin, Texas

Subscribed and sworn to before me at Austin, Texas, on this ___14th___ day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

1. The cellular telephone assigned call number **512-939-4397**, with International Mobile Subscriber Identity **310150820417425** (hereinafter referred to as **TARGET CELL PHONE**), whose service provider is **AT&T/CRICKET**, a wireless telephone service provider headquartered at 208 South Akard Street, Dallas, Texas 75202.

2. Information about the location of the **TARGET CELL PHONE** that is within the possession, custody, or control of **AT&T/CRICKET**.

## **ATTACHMENT B**

## **PARTICULAR THINGS TO BE SEIZED**

All information about the location of the **TARGET CELL PHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **TARGET CELL PHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **AT&T/CRICKET**, **AT&T/CRICKET** is required to disclose the Location Information to the government. In addition, **AT&T/CRICKET** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **AT&T/CRICKET**'s services, including by initiating a signal to determine the location of the **TARGET CELLPHONE** on **AT&T/CRICKET**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **AT&T/CRICKET** for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See 18 U.S.C. § 3103a(b)(2).*

ATTACHMENT B